UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| IN RE: | ) | Case No. 23-10617-TBM |
| UPTOWN 240 LLC | ) | |
| | ) | Chapter 11 |
| Debtor. | ) | |

# AMENDED PLAN OF REORGANIZATION
## DATED MAY 24, 2023

**KUTNER BRINEN DICKEY RILEY, P.C.**
Keri L. Riley
1660 Lincoln St., Suite 1720
Denver, CO  80264
Telephone:  303-832-2400
Email:  klr@kutnerlaw.com

Counsel to the Debtor
and Debtor-in-Possession

## TABLE OF CONTENTS

ARTICLE I ........................................................................................................................... 1

RULES OF INTERPRETATION, COMPUTATION OF TIME, ......................................... 1

GOVERNING LAW AND DEFINED TERMS ................................................................... 1

    *A.*      *Rules of Interpretation, Computation of Time and Governing Law* ................ 1

    *B.*      *Defined Terms* ............................................................................................... 1

ARTICLE II. ........................................................................................................................ 8

ARTICLE III. ....................................................................................................................... 9

    3.1      **Administrative Expense Claims** ..................................................................... 9

    3.2      **Professional Fee Claims** ............................................................................... 10

    3.3      **Priority Tax Claims** ..................................................................................... 10

    3.4      **U.S. Trustee Payments.** ................................................................................ 10

ARTICLE IV. ....................................................................................................................... 10

    4.1 -      **Class 1 Secured Claim, JGJP Dillon, LLC.** .................................................. 10

    4.2 -      **Class 2a through 2d, Class 3, Class 4, and Class 5 Secured Claims.** ............ 11

    4.3 -      **Class 6 Claim, John and Melissa Hourigan.** ............................................... 12

ARTICLE V. ........................................................................................................................ 13

    **5.1 -**      **Class 7 – Claims of Buyers.** ........................................................................... 13

    **5.2 -**      **Class 8 – General Unsecured Claims** ............................................................ 14

ARTICLE VI. ...................................................................................................................... 15

    6.1 -      **Class 9 – Interests in Uptown 240, LLC.** ..................................................... 15

ARTICLE VII. ..................................................................................................................... 15

MEANS FOR IMPLEMENTATION ................................................................................... 15

    7.1 -      **Continued Existence.** ..................................................................................... 15

    7.2 -      **Operation of Business.** ................................................................................... 15

    7.3 -      **Management Fees and Costs.** ......................................................................... 16

    7.4 -      **Conditions Precedent to the Effective Date of the Plan.** ............................... 16

    7.5 -      **Effect of Failure of Conditions.** .................................................................... 16

    7.8 -      **Oversight Meetings.** ....................................................................................... 18

    7.9 -      **Distributions to Allowed Claims.** .................................................................. 18

    7.10 -      **Objections to and Resolution of Claims.** ...................................................... 19

    7.11 -      **Establishment of Disputed Claim Reserves.** ................................................. 19

    7.12 -      **Estimation.** ..................................................................................................... 20

    7.13 -      **Contractual Relationship and Default.** .......................................................... 20

**ARTICLE VIII. EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ................... **21**

  8.1 - **Assumption and Rejection of Executory Contracts and Unexpired Leases.** ....... 21

  8.2 - **Cure.** .............................................................................................................. 21

  8.3 - **Rejection Damage Claims.** ............................................................................ 22

**ARTICLE IX.** ........................................................................................................... **22**

**EFFECT OF CONFIRMATION OF THE PLAN** ..................................................... **22**

  9.1 **Binding Effect.** ................................................................................................ 22

  9.2 **Vesting of Property.** ....................................................................................... 22

  9.3 **Reinstatement and Continuation of Insurance Policies.** .............................. 22

  9.4 **Discharge of Debtors.** ..................................................................................... 22

  9.5 **Exculpation** ..................................................................................................... 23

  9.6 **Injunction.** ....................................................................................................... 23

  9.7 **Preservation of Causes of Action** ................................................................. 24

  9.8 **Compromise and Settlement of Claims, Interests, and Controversies** ............... 24

**ARTICLE X. MISCELLANEOUS PROVISIONS** ................................................... **25**

  10.1 - **Payment of Statutory Fees.** ......................................................................... 25

  10.2 - **Retention of Jurisdiction.** .......................................................................... 25

  10.3 - **Modification of the Plan.** ........................................................................... 25

    1. Pre-Confirmation Modifications. ...................................................................... 25

    2. Post-Confirmation Immaterial Modifications. ................................................... 26

    3. Post-Confirmation Material Modifications. ....................................................... 26

  10.4 - **Governing Law.** .......................................................................................... 26

  10.5 - **Filing or Execution of Additional Documents.** ......................................... 26

  10.6 - **Exemption from Transfer Tax.** .................................................................. 26

  10.7 - **Dissolution of Committee** .......................................................................... 26

  10.8 - **Waiver of Bankruptcy Rule 3020(e) and Federal Rule of Civil Procedure 62(a).** 27

  10.9 - **Exhibits/Schedules.** .................................................................................... 27

  10.10 - **Notices.** ..................................................................................................... 27

  10.11 - **Vacatur of Confirmation Order.** .............................................................. 28

**ARTICLE XI.** ........................................................................................................... **29**

## INTRODUCTION

Uptown 240, LLC, as debtor and debtor-in-possession (the "Debtor" or "Uptown"), hereby proposes, pursuant to Chapter 11 of Title 11 of the United States Code, the following Amended Plan of Reorganization.

This Plan provides for the reorganization of the Debtor. Pursuant to the Plan, the Debtor shall refinance its existing debts and obligations and continue to operate in the ordinary course of business. A more complete history of the Debtor, its operations, an explanation of this Plan, and a description of the Debtor's financial condition and future business activity is contained in the Disclosure Statement which accompanies this Plan. Reference should be made to the Disclosure Statement by all creditors and parties who intend to cast a ballot for or against this Plan.

## ARTICLE I

## RULES OF INTERPRETATION, COMPUTATION OF TIME, GOVERNING LAW AND DEFINED TERMS

### A.   *Rules of Interpretation, Computation of Time and Governing Law*

1.      For purposes herein: (a) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine or neutral gender shall include the masculine, feminine and the neutral gender; (b) any reference herein to a contract, lease, instrument, release, indenture or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (c) any reference herein to an existing document or exhibit having been Filed or to be Filed shall mean that document or exhibit, as it may thereafter be amended, modified or supplemented; (d) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (e) unless otherwise stated, the words ''herein,'' "hereof" and ''hereto'' refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation hereof; (g) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (h) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.      The provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein.

### B.   *Defined Terms*

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form herein:

1.1 -   "Administrative Claim" means a Claim for payment of an administrative expense of a kind specified in section 503(b) or 1114(e)(2) of the Bankruptcy Code and entitled to priority

under section 507(a)(2) of the Bankruptcy Code, including (a) actual, necessary costs and expenses, incurred after the Petition Date, of preserving the Debtor's Estate and operating its business, including wages, salaries, or commissions for services rendered after the Petition Date, (b) Professional Fees, and (c) all fees and charges assessed against the Estate under chapter 123 of title 28, United States Code; *provided*, *however*, that post-Petition Date liabilities incurred or expenses arising in the ordinary course of the Debtor's business, including, but not limited to, trade vendor, employee wage and benefit, and state and local property, withholding, severance, sales, and use taxes shall not constitute Administrative Claims for which a proof of Administrative Claim shall be required to be filed.

1.2 -   "Administrative Claims Bar Date" means the deadline for filing Administrative Claims, including Professional Fee Claims, which date shall be set in the Confirmation Order.

1.3 -   "Allowed" means with respect to Claims: (a) any Claim, proof of which is timely filed by the applicable Claims Bar Date (or for which Claim under the Plan, the Bankruptcy Code, or a Final Order of the Bankruptcy Court, a Proof of Claim is not or shall not be required to be filed); (b) any Claim that is listed in the Schedules as not contingent, not unliquidated, and not disputed, and for which no Proof of Claim has been timely filed; or (c) any Claim allowed pursuant to the Plan or a Final Order of the Bankruptcy Court; provided that with respect to any Claim described in clauses (a) and (b) above, such Claim shall be considered Allowed only if and to the extent that with respect to such Claim no objection to the allowance thereof has been interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim shall have been Allowed by a Final Order. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed, and for which no Proof of Claim is or has been timely filed, is not considered Allowed and shall be expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court. Notwithstanding anything to the contrary herein and to the maximum extent provided by applicable law, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor, as applicable. For the avoidance of doubt, to the maximum extent provided by applicable law and except as provided herein or otherwise agreed, no Entity may File a Proof of Claim after the Claims Bar Date without further order of the Bankruptcy Court. "Allow" and "Allowing" shall have correlative meanings.

1.4 -   "Assets" means any and all of the Debtor's real or personal property of any nature, including, without limitation, any real estate, buildings, structures, improvements, privileges, rights, easements, leases, subleases, licenses, goods, materials, supplies, furniture, fixtures, equipment, work in process, accounts, chattel paper, cash, deposit accounts, reserves, deposits, contractual rights, intellectual property rights, claims, causes of action, any other general intangibles of either Debtor, and the property of the Estate under section 541 of the Bankruptcy Code.

1.5 -   "Assumed Contracts" means all executory contracts and unexpired leases assumed by the Debtor under section 365 of the Bankruptcy Code pursuant to an order of the Bankruptcy Court entered prior to or on the Effective Date.

1.6 - "Avoidance Actions" means the Debtors' causes of action for any avoidance or recovery action under sections 502, 506, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551, 553 and 724(a) of the Bankruptcy Code, or under related state or federal statutes and common law, including fraudulent transfers, whether or not litigation has been commenced with respect to such causes of action as of the Effective Date.

1.7 - "Bankruptcy Code" means title 11 of the United States Code, as in effect on the Petition Date, together with all amendments, modifications, and replacements of the foregoing, to the extent such amendments, modifications, or replacements are applicable to the Chapter 11 Cases.

1.8 - "Bankruptcy Court" means the United States Bankruptcy Court for the District of Colorado, or such other court as may properly exercise jurisdiction over the Chapter 11 Cases.

1.9 - "Bankruptcy Rules" means, collectively, the Federal Rules of Bankruptcy Procedure promulgated under section 2075 of title 28 of the United States Code and the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, as applicable to the Chapter 11 Cases or proceedings therein, and the Local Rules of the Bankruptcy Court, all as now in effect or hereafter amended, and as applicable to the Chapter 11 Cases.

1.10 - "Bridge Loan" means the short term loan to be closed on by the Debtor for the purpose of refinancing the existing secured debt.

1.11 - "Business Day" means any day, excluding Saturdays, Sundays or "legal holidays" (as defined in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Denver, Colorado.

1.12 - "Buyers" means any Creditor holding a Claim arising from an unexpired, unterminated Sale Contract with the Debtor as of the Petition Date.

1.13 - "Cash" means cash and cash equivalents, including, without limitation, wire transfers, bank deposits, checks and legal tender of the United States.

1.14 - "Causes of Action" means any and all of the Estate's and the Debtor's actions, Claims, demands, rights, defenses, counterclaims, suits, causes of action, liabilities, obligations, debts, judgments, remedies, damages, recoupments, cross claims, counterclaims, third-party claims, indemnity claims, contribution claims, and any other claim, whether known or unknown, foreseen or unforeseen, direct or indirect, derivative, choate or inchoate, in law, equity, or otherwise, including all Avoidance Actions, and any and all other claims or rights of any value whatsoever, at law or in equity, against any Creditor or other third party, including any and all claims against any Insiders, members, officers, directors, managers or employees of the Debtors; *provided*, *however*, that, when used in the Plan, the term "Causes of Action" does not include any Claim, obligation, suit, judgment, damages, right, remedy, cause of action, charge, cost, debt, indebtedness, or liabilities released or waived pursuant to Paragraph 10.5 of the Plan or by order of the Bankruptcy Court, nor does the term "Causes of Action" include any appeals pending under applicable State Law for the refund of severance taxes; *provided further however,* that the term "Causes of Action" does not include the Debtors or Reorganized Debtors rights of recoupment to collect unpaid joint interest billing obligations from Revenue Parties, if any.  When used in the

3

Plan, the term "Causes of Action" shall also specifically include any claim, demand, right, and cause of action that may only be asserted by a Person other than the Debtor (including the Holder of a Claim or Interest) on a derivative or other basis. A Cause of Action shall not under any circumstances be waived as a result of the failure of the Debtors to describe such Cause of Action with specificity in the Plan. Except as expressly provided herein, nothing in the Plan operates as a release of any of the Causes of Action.

1.15 - "Chapter 11 Case" mean the Debtor's Chapter 11 cases, pending in the Bankruptcy Court under Case No. 23-10617-TBM.

1.16 - "Claim" means a "claim" against either Debtor, as defined in section 101(5) of the Bankruptcy Code and as supplemented by section 102(2) of the Bankruptcy Code, whether or not asserted, or reduced to judgment, whether known or unknown, liquidated or unliquidated, fixed, contingent, non-contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, whether arising before, on, or after the Petition Date.

1.17 - "Claims Bar Date" means May 12, 2023 or such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court to file such Claims.

1.18 - "Claims Objection Bar Date" means, for each Claim, the later of (a) 120 Days after the Effective Date of the Plan and (b) such other period of limitation as may be specifically fixed by an order of the Bankruptcy Court for objecting to such Claims.

1.19 - "Class" means one of the classes of Claims or Interests listed in Article II of this Plan.

1.20 - "Collateral" means any property or interest in property of either Debtor's Estate subject to a Lien to secure the payment or performance of a Claim, which Lien is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or other applicable law.

1.21 - "Committee" means the Official Committee of Unsecured Creditors as set forth in the *United States Trustee's Amended Appointment of Official Committee of Unsecured Creditors* (Docket No. 79), as amended from time to time.

1.22 - "Confirmation" means the entry of the Confirmation Order by the Bankruptcy Court.

1.23 - "Confirmation Date" means the date that the Bankruptcy Court enters a Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

1.24 - "Confirmation Hearing" means the hearing held by the Bankruptcy Court to consider confirmation of this Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.25 - "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan under section 1129 of the Bankruptcy Code.

1.26 - "Construction Loan" means the financing to be secured by the Debtor post-Effective Date of the Plan to be used for the purpose of completing construction of the development on the Property.

1.27 - "Creditor" means a creditor, within the meaning of section 101(10) of the Bankruptcy Code of the Debtor.

1.28 - "Debtor" means the Debtor who is proposing this Plan, Uptown 240, LLC.

1.29 - "Disallowed Claim" means a Claim, or any portion thereof, that (a) has been disallowed by a Final Order, or (b) is not Scheduled or is Scheduled at zero or as contingent, disputed, or unliquidated and as to which a bar date has been established but no proof of claim has been filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, or otherwise deemed timely filed under applicable law.

1.30 - "Disputed Claim" means a Claim, or any portion thereof, that is neither an Allowed Claim nor a Disallowed Claim, including, but not limited to, Claims (a) (i) that have not been Scheduled by either Debtor, but as to which a timely proof of claim has been filed or (ii) have been Scheduled at zero or as contingent, unliquidated, or disputed, but as to which a timely proof of claim in a liquidated amount has been filed and (b) as to which either Debtor, either Reorganized Debtor, or any other party-in-interest has interposed a timely objection or request for estimation, or has sought to subordinate or otherwise limit recovery, in accordance with the Bankruptcy Code and the Bankruptcy Rules, or which is otherwise disputed by either Debtor, either Reorganized Debtor, or other party-in-interest in accordance with applicable law, which objection, request for estimation, action to limit recovery, or dispute has not been withdrawn or determined by a Final Order. In the event that any part of a Claim is disputed, such Claim in its entirety shall be deemed to constitute a Disputed Claim for purposes of distributions under this Plan unless and until a Final Order has been entered allowing such Claim.

1.31 - "Disputed Claim Reserve" means the reserve established and maintained by the Reorganized Debtor in accordance with Paragraph 8.14 of the Plan.

1.32 - "Distributions" means the properties or interests in property to be paid or distributed under this Plan to the holders of Allowed Claims.

1.33 - "Effective Date" means the date that all conditions to consummation of this Plan set forth in Paragraph 7.4.

1.34 - "Entity" means an "entity" as defined in section 101(15) of the Bankruptcy Code.

1.35 - "Estate" means the estate of the Debtor created by section 541 of the Bankruptcy Code on the Petition Date.

1.36 - "Exculpated Party" means Uptown, the Committee, and their respective officers, directors, employees, partners, advisors, attorneys, financial advisors, accountants, and other professionals.

1.37 - "Executory Contract" means every unexpired sales contract, unexpired Lease, and every other contract that is subject to being assumed or rejected by the Debtor under 11 U.S.C. § 365, pursuant to the Plan or pursuant to a separate motion.

1.38 - "Final Decree" means the decree or other order of the Bankruptcy Court closing the Chapter 11 Case, as contemplated by section 350(a) of the Bankruptcy Code and Bankruptcy Rule 3022.

1.39 - "Final Order" means an order, ruling, or judgment of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for reargument or rehearing shall then be pending, or as to which any right to appeal, petition for certiorari, reargue, or rehear shall have been waived, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court of other court of competent jurisdiction shall have been determined by the highest court to which such order was appealed, or certiorari, reargument or rehearing shall have been denied and the time to take any further appeal, petition for certiorari, or move for reargument or rehearing shall have expired; *provided, however,* that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous Bankruptcy Rule or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

1.40 - "General Unsecured Claim" means any Claim that is not (a) entitled to priority under section 507(a) of the Bankruptcy Code or subordinated pursuant to section 510(b) of the Bankruptcy Code, or (b) a Secured Claim, Priority Tax Claim, or Other Priority Claim.

1.41 - "Holder" means an Entity holding a Claim or Interest (as the case may be), and with respect to a Distribution under the Plan, an Entity holding the beneficial interest in a Claim or Interest as of the Distribution Date

1.42 - "Impaired" means, when used with reference to a Claim or Interest, a Claim or Interest (as the case may be) that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.43 - "Insider" means (i) an "insider," as defined in Section 101(31) of the Bankruptcy Code, and (ii) an "affiliate," as defined in Section 101(2) of the Bankruptcy Code.

1.44 - "Interest" shall mean any member interest, preferred, common, or otherwise, or any other instrument evidencing any ownership interest in the Debtors and any option, warrant or right of any nature, contractual or otherwise, to acquire an ownership interest in the Debtors.

1.45 - "Lease" means any lease agreement between either Debtor and another Entity.

1.46 - "Lien" means any charge against or interest in property to secure payment or performance of a claim, debt, or obligation.

1.47 - "<u>Mechanics Lien Party</u>" means any Creditor with an Allowed Claim arising from work performed on or materials delivered to the Property for which such Creditor has properly asserted and perfected its rights pursuant to C.R.S. §§ 38-22-101, et seq.

1.48 - "<u>Net Revenue</u>" means the revenue generated by the Debtor through sale or lease of units or commercial space after payment of expenses including payments to secured creditors.

1.49 - "<u>Other Priority Claim</u>" means a Claim entitled to priority under section 507(a) of the Bankruptcy Code, other than an Administrative Claim, a Priority Wage Claim, or a Priority Tax Claim.

1.50 - "<u>Person</u>" means a "person" as defined in section 101(41) of the Bankruptcy Code.

1.51 - "<u>Petition Date</u>" means February 23, 2023, the date on which the Debtor filed its voluntary petition commencing the Chapter 11 Case.

1.52 - "<u>Plan</u>" means this joint plan under Chapter 11 of the Bankruptcy Code, together with all exhibits and schedules hereto, as it has been or may be amended, modified, or supplemented from time to time in accordance with section 1127 of the Bankruptcy Code.

1.53 - "<u>Plan Supplement</u>" shall mean the supplement that shall be filed by the Debtor no later than five (5) days prior to a hearing on confirmation of the Plan and shall include, as applicable, a budget for the Bridge Loan, any subsequent binding commitment letter for the Bridge Loan, and/or the Notice of Auction.

1.54 - "<u>Priority Tax Claim</u>" means a Claim that is entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.55 - "<u>Priority Wage Claim</u>" means a Claim that is entitled to priority under Section 507(a)(4) and 507(a)(5) of the Bankruptcy Code.

1.56 - "<u>Proceeds</u>" shall mean the Gross Proceeds from the sale or refinancing of the Property less the costs of sale, applicable real estate taxes, brokers' commissions, and other necessary closing costs.

1.57 - "<u>Professional</u>" means any professional employed in the Chapter 11 Cases pursuant to section 327 of the Bankruptcy Code or otherwise, and the professionals seeking compensation or reimbursement of expenses in connection with the Chapter 11 Cases pursuant to section 503(b)(4) of the Bankruptcy Code.

1.58 - "<u>Professional Fee Claim</u>" means a Claim of a Professional for compensation for services rendered, and/or reimbursement of costs and expenses incurred, after the Petition Date and prior to and including the Confirmation Date.

1.59 - "<u>Proof of Claim</u>" means a proof of claim pursuant to section 501 of the Bankruptcy Code and/or any order of the Bankruptcy Court, together with supporting documents.

1.60 -  "Property" means the Debtor's real property located at 240 Lake Dillon Drive, Dillon, Colorado.

1.61 -  "Reorganized Uptown or Reorganized Debtor" means the Debtor, as reorganized pursuant to and under the Plan on or after the Effective Date.

1.62 -  "Receivables" means the amount owed under existing Sale Contracts upon issuance of a Certificate of Occupancy that are assumed by the Debtor in accordance with this Plan.

1.63 -  "Sale Contracts" means those certain Form Sales Contracts (Purchase Agreement, Escrow Instructions, and Deposit Receipt) by and between the Debtor and Buyers pursuant to which Buyers agreed to purchase condominium units from the Debtor upon completion.

1.64 -  "Schedules" means the schedules of assets and liabilities, the list of Holders of Interests, and the statement of financial affairs filed by the Debtors in the Chapter 11 Cases under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules, lists, and statements have been or may be supplemented or amended from time to time in accordance with Bankruptcy Rule 1009.

1.65 -  "Secured Claim" means (a) a Claim that is secured by a Lien on property in which the Estate has an interest, which Lien is valid, perfected and enforceable under applicable law or by reason of a Final Order, or that is subject to setoff under section 553 of the Bankruptcy Code, to the extent of the value of the Holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code, or (b) a Claim that is Allowed as a Secured Claim under this Plan.

1.66 -  "Scenario 1" means a scenario wherein the Debtor closes on the Bridge Loan and completes a partial refinance of its debt as set forth more specifically in Paragraph 7.6 of this Plan.

1.67 -  "Scenario 2" means a scenario wherein the Debtor sells the Property on a pre- or post-Confirmation Date and distributes Proceeds in accordance with Paragraph 7.7 of this Plan.

1.68 -  "Unimpaired Claim" means a Claim that is not Impaired under this Plan.

## ARTICLE II.

## DESIGNATION OF CLAIMS AND INTERESTS

The following is a designation of all classes of Claims and Interests other than those Claims of a kind specified in Sections 507(a)(2), 507(a)(3) or 507(a)(8) of the Code.

Class 1 - The Allowed Secured Claim of JGJP Dillon, LLC

Class 2a-2d - The Allowed Secured Claims held by the Mechanics Lien Parties

Class 2a – The Allowed Secured Claim of Symmetry Builders, Inc.

Class 2b - The Allowed Secured Claim of ClayDean Electric Company

Class 2c – The Allowed Secured Claim of RMS Concrete, Inc.

Class 2d – The Allowed Secured Claim of Barton Materials, LLC

Class 3 – The Allowed Secured Claim of the Town of Dillon

Class 4 – The Allowed Secured Claim of ProNet Capital, LLC

Class 5 – The Allowed Secured Claim of Craig Slawson

Class 6 – The Allowed Secured Claim of John and Melissa Hourigan

Class 7 – The Allowed Claims of Buyers

Class 8 – The Allowed General Unsecured Claims held by unsecured creditors unless separately classified.

Class 9 – The Interests in Uptown 240, LLC

## ARTICLE III.

## SPECIFICATION AND TREATMENT OF UNCLASSIFIED PRIORITY CLAIMS

As provided in Section 1123(a)(1) of the Bankruptcy Code, the Claims against the Debtors covered in this Article III are not classified. The holders of such Allowed Claims are not entitled to vote on the Plan.

3.1     **Administrative Expense Claims**

Except as otherwise provided for herein, on the latest of (i) the Effective Date, (ii) the date that is five (5) Business Days after the date an Administrative Claim becomes an Allowed Administrative Claim, or (iii) the date that is five (5) Business Days after the date an Allowed Administrative Claim becomes payable pursuant to any agreement between the applicable Debtor, as the case may be, and the Holder of such Administrative Claim, each Holder of an Allowed Administrative Claim shall receive from the Reorganized Debtor, in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Administrative Claim, Cash equal to the unpaid portion of such Allowed Administrative Claim.  Notwithstanding anything to the contrary, that post-Petition Date liabilities incurred or expenses incurred in the ordinary course of the Debtor's business, including, but not limited to, vendor expenses and state and local property taxes shall be paid by the Reorganized Debtor in the ordinary course of business without the need for further Bankruptcy Court approval.

Notwithstanding any other provision in this Plan regarding the payment of Administrative Claims, the Confirmation Order shall establish an Administrative Claims Bar Date for filing Administrative Claims, which date shall be 45 days after the Confirmation Date.  Holders of asserted Administrative Claims, except for (i) Professional Fee Claims, (ii) United States Trustee fees, and (iii) post-Petition Date liabilities incurred or expenses arising in the ordinary course of the Debtors' business, shall submit requests and seek allowance and payment of administrative

9

expenses so as to be *actually received* on or before such Administrative Claims Bar Date or forever be barred from doing so.  The notice of entry of the Confirmation Order to be delivered pursuant to Fed. R. Bankr. P. 3020(c) and 2002(f) shall set forth such date and constitute notice of the Administrative Claims Bar Date.  The Reorganized Debtor shall have 45 days (or such longer period as may be allowed by order of the Bankruptcy Court) following the Administrative Claims Bar Date to review and object to such Administrative Claims before a hearing for determination of allowance of such Administrative Claims.

### 3.2    Professional Fee Claims

Each Professional whose retention with respect to the Chapter 11 Case has been approved by the Bankruptcy Court, who is required by the terms of their engagement to file Fee Applications, and who holds or asserts an Administrative Claim that is a Professional Fee Claim shall be required to file with the Bankruptcy Court, and to serve on all parties required to receive notice, a final Fee Application on or before the Administrative Claims Final Bar Date.  The failure to timely file the Fee Application shall result in the Professional Fee Claim being forever barred and discharged.  A Professional Fee Claim with respect to which a Fee Application has been properly and timely filed shall be treated and paid as an Administrative Claim only to the extent allowed by Final Order.

### 3.3    Priority Tax Claims

Each Holder of an Allowed Priority Tax Claim shall receive from the Reorganized Debtors in full satisfaction, settlement, release, and discharge of and in exchange for such Allowed Priority Tax Claim (a) in the Reorganized Debtors' sole discretion, either (i) on the Effective Date or as soon as practicable thereafter, Cash in an amount equal to such Allowed Priority Tax Claim, or (ii) treatment provided under section 1129(a)(9), including, without limitation, section 1129(a)(9)(C), of the Bankruptcy Code; or (b) such other treatment as to which the Debtors or the Reorganized Debtors, as applicable, and the Holder of such Allowed Priority Tax Claim shall have agreed upon in writing.  For the avoidance of a doubt, Allowed Priority Tax Claims shall be paid in full with any statutory interest within five (5) years of the Petition Date.

### 3.4    U.S. Trustee Payments.

The Debtor or Reorganized Debtor, as applicable, will make all payments required to be paid to the Office of the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) until the case is closed, converted, or dismissed.  All payments due to the U.S. Trustee pursuant to 28 U.S.C. § 1930(a)(6) shall be paid on the Effective Date, and the Reorganized Debtor shall thereafter pay U.S. Trustee fees due on a quarterly basis until the case is closed, converted, or dismissed.

### ARTICLE IV.

### SPECIFICATION AND TREATMENT OF SECURED CREDITOR CLAIMS

### 4.1 -    Class 1 Secured Claim, JGJP Dillon, LLC.

The Class 1 Secured Claim consists of the Allowed Claim of JGJP Dillon, LLC ("JGJP"), based on the Note and Deed of Trust acquired by JGJP from the prior holder on or about September 15, 2022.  The Class 1 Secured Claim will be treated and paid in accordance with the Settlement

Agreement, which is attached hereto as Exhibit A. Consistent with the Settlement Agreement, the Class 1 Secured Claim shall be Allowed in the amount owed on the Confirmation Date with all rights and interests accorded under the Note and Deed of Trust and shall be paid as set forth in the Settlement Agreement. The Settlement Agreement remains subject to Court approval by separate motion. In the event the Settlement Agreement is not approved, the Settlement Agreement will be null and void, and the Debtor will amend its Plan to provide for an alternative treatment of the Class 1 Claim.

The Classification of the Class 2 through 6 Claims, (whether based on an asserted mechanic's lien, judgment lien or other lien) relative to the JGJP Claim is for purposes of claim administration and effectuating the Plan in this Chapter 11 case only, and is not intended to bind the parties nor be construed as an admission by any of those parties or JGJP as to the validity, relative priority, and amount of their respective liens in the Lien Foreclosure Case.

**4.2 -**   **Class 2a through 2d, Class 3, Class 4, and Class 5 Secured Claims.**

The Class 2a through 2d, Class 3, Class 4, and Class 5 Claims (collectively the "Secured Claims") constitute the remaining secured claims against the Property subject to section 4.3 herein. The Secured Claims are impaired by the Plan. Effective Date of the Plan, the Secured Claims shall be treated and paid as follows:

a.   Subject to Article 4.2(c) herein, on the Effective Date of the Plan, the Secured Claims shall be allowed (i) in the principal amount owed on the Effective Date of the Plan or (ii) if the Holders of Secured Claims object, in an amount to be determined by the Court on or before the Confirmation Date; or (iii) an amount agreed upon by the Debtor and the respective Holder of a Secured Claim on or before the Confirmation Date.

b.   Subject to Article 4.2(c), Secured Claims shall retain their liens on the Property until the earlier of: 1) closing of the Bridge Loan if the Debtor is proceeding under Scenario 1, or 2) sale of the Property if the Debtor is proceeding under Scenario 2. Upon the occurrence of either event, all liens held by the Secured Claims shall transfer to the Proceeds.

c.   The Secured Claims shall receive payment from the Proceeds in the following amounts in satisfaction in full of the amount of their secured claim ("Secured Claim Payment"):

| Class | Creditor | Secured Claim Payment Amount |
|-------|----------|------------------------------|
| 2a | Symmetry Builders, Inc. | $3,500,000 |
| 2b | ClayDean Electric Company | $49,554 |

11

| 2c | RMS Concrete, Inc. | $775,000[1] |
| 2d | Barton Materials, LLC | $208,525.80 |
| 3 | Town of Dillon | $71,000.00 |
| 4 | ProNet Capital, LLC | $125,000 |
| 5 | Craig Slawson | $850,000 |
| | **Total** | **$5,579,079.80** |

The Secured Claim Payment represents the Debtor's offer to the respective Secured Creditors to settle the claims of the various parties in lieu of litigation over claim objections and/or priority of liens on the Property. In the event the Holder of a Secured Claim objects to their Secured Claim Payment, Proceeds shall be held in escrow pending a determination by the Court of the amount of Proceeds to which such creditor is entitled. In the event the amount of the Secured Claim exceeds the amount of Proceeds remaining, the Holder of the Secured Claim shall have a lien on the Debtor's Receivables if the Debtor proceeds under Scenario 1, or shall have a Class 8 general unsecured claim if the Debtor proceeds under Scenario 2. Any liens on Receivables shall bear interest at a rate of 7% per annum and shall be paid upon final sale of a unit or receipt of receivables.

Acceptance of the Secured Claim Payment shall constitute a release by the Debtor of any objection to the Holder's Secured Claim and a release of any claims or defenses related thereto. Acceptance of the Secured Claim Payment shall further constitute a release by the Holder of the Secured Claim accepting the Secured Claim Payment of any further lien rights such holder may assert as to the Property or the Proceeds. Acceptance of the Secured Claim Payment shall not release, modify, alter, or amend any Holder's right to assert an unsecured claim, or any claims, defenses, or argument related to such unsecured claim by the Holder or Debtor.

d.      After the Effective Date of the Plan, payment of the Secured Claims shall be made within five (5) business days of the later of: 1) closing on the Bridge Loan, if the Debtor is proceeding under Scenario 1; or 2) sale of the Property if the Debtor is proceeding under Scenario 2. Notwithstanding the foregoing, in the event the Secured Claims are not paid on the four (4) month anniversary of the Effective Date of the Plan, Holders of Secured Claims may exercise any and all rights with respect to such claim under applicable State Law, including, without limitation, any right to foreclose on a lien or deed of trust.

4.3 -   **Class 6 Claim, John and Melissa Hourigan.**

---

[1] The Class 2c Claimant, RMS Concrete, Inc., shall further have an allowed general unsecured claim in the amount of $100,000, which shall be treated and paid as a Class 8 claim.

Class 6 is comprised of the claim of John and Melissa Hourigan based on a judgment lien recorded against the Property on February 9, 2023.  The Debtor asserts that the recording of the judgment lien constitutes and avoidable preference pursuant to 11 U.S.C. § 547.  The Class 6 Claim shall be treated as follows:

        a.      On the Effective Date of the Plan, the Class 6 Claim shall be deemed unsecured, and the Class 6 Claimant shall have a Class 8 General Unsecured Claim in the amount owed on the Petition Date.

        b.      Notwithstanding the avoidance of the lien, the non-monetary aspects of the judgment forming the basis the Class 6 Claim shall remain in full force and effect, and the prior sales contract by and between Uptown 240, LLC and John and Melissa Hourigan is terminated and rescinded in its entirety.

        c.      Entry of an Order approving the Plan shall constitute an approved settlement of any and all Avoidance Actions the Debtor may have against the Class 6 Claimant, including without limitation claims arising under 11 U.S.C. § 547, and a release of any potential claims pursuant to Fed. R. Bankr. P. 9019.

## ARTICLE V.

## SPECIFICATION AND TREATMENT OF
## UNSECURED CREDITOR CLAIMS

### 5.1 -   Class 7 – Claims of Buyers.

Class 7 consists of the Allowed Claims held by Buyers who entered into Sale Contracts with the Debtor prior to the Petition Date.  As set forth in Article VII, the Plan contemplates two scenarios.  Scenario 1 contemplates the successful closing on the Bridge Loan for the Plan to become Effective.  Scenario 2 contemplates the commencement of a sale process either pre-confirmation or in the event the Debtor is unable to close on the Bridge Loan.

Scenario 1 - Refinance

Prior to the Confirmation Date, Buyers may elect for the Debtor to assume their Sale Contract or Reject their Sale Contract unless otherwise specifically assumed or rejected by the Debtor on separate Motion with appropriate notice (the "Electing Buyers").  Such election must be made at the time of voting to accept or reject the Plan.  Election of assumption of a Sale Contract will not constitute acceptance of the Plan unless a vote to accept the Plan is made in conjunction with such election by the Holder of the Claim.  Similarly, election for rejection of a Sale Contract will not constitute rejection of the Plan unless such a vote is made by the Holder of the Claim.

Election for assumption of the Contract shall constitute an agreement by the Buyer making such election that:

        a.      No monetary cure is due in connection with the assumption of the Sale Contract;

        b.      The Debtor has provided adequate assurance of future performance;

    c.    The Electing Buyer will remain bound by the terms of the Sale Contract and will remit final payment for the purchased unit upon issuance of a Certificate of Occupancy or as otherwise provided in the applicable contract;

    d.    The Debtor will remain bound by the terms of the Sale Contract, including the price of the sold unit and the amenities contemplated therewith, including prepayment of certain HOA dues as applicable in the subject contract; and

    e.    The Electing Buyer is waiving any right to further payment under the Plan.

Any Buyer electing rejection of their Sale Contract by the Debtor shall have a rejection claim in accordance with 11 U.S.C. § 365(g) and Article VIII below, and shall be treated as a Class 8 General Unsecured Claimant.  Any Buyer electing rejection of their Sale Contract that asserts a priority claim pursuant to 11 U.S.C. § 507(a)(7) shall file an application for such expense not later than thirty (30) days following the Effective Date of the Plan with fourteen (14) day notice to the Debtor.  If the Debtor does not object to the application, such Buyer shall have an allowed priority claim in the amount set forth in section 507(a)(7).  All priority claims shall be paid on the later of the date on which: 1) the priority claim is Allowed; or 2) the date on which Proceeds are distributed to creditors.

**If the Debtor is unable to close on the Bridge Loan and is proceeding under Scenario 2, all elections shall be null and void, all Sale Contracts shall be deemed rejected, and all Class 7 Claimants shall be treated as Class 8 General Unsecured Creditors.**

Scenario 2 – Commencement of a Sale Process

If the Debtor is proceeding under Scenario 2, all Class 7 Claimants shall be treated as Class 8 General Unsecured Creditors.

**5.2 -   Class 8 – General Unsecured Claims**

Class 8 is comprised of the General Unsecured Claims against the Debtor.  The Distributions to Class 8 Creditors will depend on the scenario under which the Debtor proceeds.

Scenario 1 – Refinance

If the Debtor is proceeding with a refinance through a closing the Bridge Loan, beginning on the earlier of: 1) the eighteen month anniversary of the Effective Date of the Plan, or 2) the date on which the Debtor completes its first unit, the Debtor will, at the end of each month set aside 50% of its Net Revenue into a segregated account ("Unsecured Creditor Account").  Each time three deposits have been deposited into the Unsecured Creditor Account, the Debtor shall make distributions to Class 8 Creditors on a pro rata basis.  Distributions shall continue until Class 8 Creditors are paid in full.

Scenario 2 – Sale of Property

If the Debtor is proceeding with a sale of the Property, the Debtor shall work with professionals to maximize the value of the Property.  Upon sale of the Property, the Proceeds shall

be used first to satisfy the Class 1 through 5 Claims and any Administrative Expense Claims, and any remaining amount shall be distributed on a pro rata basis to Class 8 Creditors.

In addition to the distributions set forth above, Class 8 shall be entitled to receive the proceeds whether obtained by litigation or settlement, net of attorney fees, expert fees, costs, obtained from any Causes of Action pursued by the Debtor, including the Avoidance Actions which shall be reserved tot eh estate for the benefit of Class 8 creditors, and which claims shall not revest in the Debtor.

## ARTICLE VI.

## SPECIFICATION AND TREATMENT OF CLASS 9 INTERESTS

6.1 -   **Class 9 – Interests in Uptown 240, LLC.**

Class 9 includes the Interests in Uptown 240, LLC.  Class 9 is unimpaired if the Debtor is proceeding under Scenario 1, and is impaired if the Debtor is proceeding under Scenario 2 and this paragraph shall govern its treatment.

Scenario 1- On the Effective Date of the Plan, Class 9 shall retain its Interests in Uptown 240.

Scenario 2 – Class 9 shall retain its interests until the closing of the sale of the Property and distribution of funds solely for administrative purposes.  Class 9 Interest Holders shall not receive anything on account of their Interests until Class 8 creditors are paid in full.  After all distributions are made following the sale, the Debtor shall be dissolved and the equity interests canceled.

## ARTICLE VII.

## MEANS FOR IMPLEMENTATION

7.1 -   **Continued Existence.**

Uptown, as a Reorganized Debtor, shall continue to exist after the Effective Date with all of the powers of a limited liability company under the laws of the State of Colorado and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable law, except as such rights may be limited and conditioned by the Plan, Confirmation Order, and/or the documents and instruments executed and delivered in connection therewith.  The Reorganized Debtors may operate their business free of any restrictions imposed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, subject only to the terms and conditions of the Plan, the Confirmation Order, and the documents and instruments executed and delivered in connection herewith and therewith.

7.2 -   **Operation of Business.**

The Debtor shall be empowered to take such action as may be necessary to perform their obligations under this Plan.  All Executory Contracts assumed by the Debtor in accordance with Article VIII shall be in full force and effect, and the Reorganized Debtor shall be empowered to

exercise all rights and remedies thereunder.  Uptown shall be empowered to retain any and all professionals necessary to effectuate this Plan, including, without limitation, attorneys, accounts, and brokers.

7.3 -   **Management Fees and Costs.**

The Reorganized Debtor shall be entitled to compensate its managers, officers and directors with reasonable compensation for services following confirmation of the Plan.  Compensation to managers and directors is contingent on: 1) a successful closing on the Bridge Loan; and 2) a successful remobilization of construction efforts.   The total amount of compensation paid to the Debtor's officers will not exceed the following amounts:

> Danilo Ottoborgo, President - $125,000-150,00 per year
> Chantelle Ottoborgo, Executive Vice President - $125,000-150,000 per year

Successful remobilization efforts shall be based upon the occurrence of benchmarks no. 1 through 5 set forth in section 7.6 herein.  The occurrence of one of benchmarks shall entitle Mr. and Ms. Ottoborgo to 20% of the compensation set forth above, paid on a monthly basis. The occurrence of each subsequent benchmark shall entitle Mr. and Ms. Ottoborgo to another 20% of the total compensation.  For the avoidance of a doubt, upon occurrence of benchmarks no. 1 through 5 below, Mr. and Ms. Ottoborgo shall be entitled to receive the full amount of their yearly salaries.

7.4 -   **Conditions Precedent to the Effective Date of the Plan.**

The Plan shall not become effective and the Effective Date of the Plan shall not occur until the first business date on which the following items have been satisfied:

a.   The Order of Confirmation shall have been entered by the Court and shall have become a Final Order which is not stayed;

b.   the Confirmation Date shall have occurred;

c.   no request for revocation of the Confirmation Order under Bankruptcy Code section 1144 shall have been made, or if made, remain pending; and

d.   The closing on the Bridge Loan as set forth in Paragraph 7.6 shall occur (Scenario 1)

— OR –

The Debtor sells the Property pursuant to 11 U.S.C. § 363 prior to confirmation of this Plan, or if the Debtor is unable to close on the Bridge Loan in accordance with the Settlement Agreement, the Debtor proceeds with its sale efforts with Hilco, including the anticipated auction (Scenario 2) as set forth in Paragraph 7.7 below.

7.5 -   **Effect of Failure of Conditions.**

In the event that the Effective Date does not occur, upon notification submitted by the Debtors to the Bankruptcy Court:  (a) the Confirmation Order shall be vacated and all provisions contained therein, including without limitation, any provisions relating to discharge, shall be null and void, (b) no Distribution under the Plan shall be made, (c) the Debtors and all holders of

Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, (d) the obligations with respect to the Claims and Interests shall remain unchanged and nothing contained in the Plan shall constitute or be deemed a waiver or release of any Claims or Interests by or against the Debtors or any other person or to prejudice in any manner the rights of the Debtors or any person in any further proceedings involving the Debtors, and (e) nothing contained in the Plan shall (i) prejudice in any manner the rights of the Debtors, (ii) constitute an admission, acknowledgment, offer, or undertaking by the Debtors in any respect, including in any proceeding or case against the Debtors, or (iii) be admissible in any action, proceeding or case against the Debtors in any court or other forum.

7.6 -   **Scenario 1 - Refinancing of the Debtor.**

In accordance with the Settlement Agreement, the Debtor will be required to close a Bridge Loan in an amount of not less than $15.7 million in funding to the Debtor, net of any holdbacks or escrowed amounts.  The amount of the new loan is subject to the amount of funds agreed to be advanced by the new lender. The Debtor will file an updated commitment letter for the Bridge Loan (to the extent an updated commitment letter exists), and a proposed budget for the use of the loan proceeds at least five (5) days prior to any hearing on Confirmation of the Plan.  The Proceeds of the Bridge Loan will be distributed in accordance with the terms of the Plan and the proposed budget.

The Debtor shall further be required to close on a Construction Loan not later than six (6) months following Effective Date of the Plan.   If the Debtor fails to close on a Construction Loan by such date, the Debtor shall immediately reengage a realtor/broker and shall sell the Property no later than nine (9) months following the Effective Date of the Plan.

To ensure that the Debtor is working to timely close on the Construction Loan, the Debtor shall further endeavor to meet the following benchmark dates:

1)      Obtain a quote for an Owner Controlled Insurance Program not later than [●] months following the Effective Date of the Plan;
2)      Engage one or more general contractors to complete a rebid of the Property not later than (3) month following the Effective Date of the Plan;
3)      Obtain an extension of existing Planned Unit Development Agreement not later than three (3) months following the Effective Date of the Plan;
4)      Obtain an extension of prior construction permits or new construction permits not later than four (4) months following the Effective Date of the Plan;
5)      Enter into a Guaranteed Maximum Price Contract with a general contractor not later than four (4) months following the Effective Date of the Plan;
6)      Completion of a budget for the Construction Loan;
7)      Obtain a firm commitment letter for the Construction Loan not later than five (5) months following the Effective Date of the Plan.

The Debtor shall provide updates regarding the status of the completion of the benchmark dates at the Oversight Meetings conducted in accordance with Section 7.8 herein, and if it has not completed such benchmarks, will apprise parties in attendance as to when it anticipates that it will

meet each benchmark.

**7.7 -**   **<u>Scenario 2 - Sale of the Property.</u>**

In consultation with the Committee and Secured Creditors, the Debtor may sell the Property pursuant to 11 U.S.C. 363 prior to confirmation of this Plan.  While the Debtor shall consult with the Committee and Secured Creditors, the Debtor retains sole discretion to determine whether to proceed with a sale ahead of confirmation of the Plan.  In the event that this Plan is confirmed prior to any sale and the Debtor is not able to close on the Bridge Loan, in accordance with the Settlement Agreement the Debtor shall close on a sale no later than ninety (90) days after the filing of a Motion to Approve the Settlement Agreement, October 16, 2023.  For any post-confirmation sale, the Debtor will have authority to sell the Property free and clear of liens, claims, and encumbrances pursuant to 11 U.S.C. § 363(f), with any liens attaching to Proceeds to the extent not paid at closing.  The listing price for the Property shall be determined by the Debtor in its sole discretion in consultation with retained professionals.  Proceeds from any sale of the Property and any remaining funds in accounts will be distributed in accordance with the Plan and 11 U.S.C. § 507(a).

**7.8 -**   **<u>Oversight Meetings.</u>**

If the Debtor proceeds under Scenario 1, on first Thursday of each month,  the Debtor shall host a meeting for Buyers, Creditors, any representative thereof, including without limitation, any representative of the Town of Dillon, and any other party in interest.  Such meetings will be conducted in person with an option for parties to observe virtually by Zoom.  Five (5) days prior to each meeting, Buyers and Creditors may submit questions to the Debtor to be addressed at the subsequent meeting.

In addition to the Oversight Meetings set forth above, the Debtor shall engage an independent management firm during construction to serve as the primary liaison for creditors, Buyers, the Town of Dillon, and any other parties in interest to promote open dialogue and forthright communications.  The management company will further provide assistance to ensure the Debtor remains in compliance with the terms of the Plan and facilitate coordination with contractors to ensure adherence to project timelines, facilitate contract negotiations, track and manage permits and change orders, and aid in ensuring that the project remains compliant with all applicable budgets.

**7.9 -**   **<u>Distributions to Allowed Claims.</u>**

(a)   Delivery of Distributions.

Distributions shall be made by the Reorganized Debtor from time to time to the Holders of Allowed Claims at the addresses set forth on the Schedules, unless such addresses are superseded by a proof of claim or transfer of claim filed pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date (or at the last known addresses of such Holders if the Reorganized Debtor has been notified in writing of a change of address).

(b)      Distribution of Cash.

Any payment of Cash by the Reorganized Debtor pursuant to the Plan shall be made, at the option and in the sole discretion of the Reorganized Debtor, by (i) a check drawn on, or (ii) wire transfer from, a domestic bank selected by the Reorganized Debtor.

(c)      Unclaimed Distributions.

Any Distribution of Cash under the Plan to the Holder of an Allowed Claim that remains unclaimed for a period of ninety (90) days after it has been delivered (or attempted to be delivered) in accordance with the Plan shall be transferred to and become property of the Reorganized Debtor notwithstanding state or other escheat or similar laws to the contrary, and any and all entitlement by the Holder of such Claim to such Distribution shall be extinguished and forever barred.

(d)      Saturdays, Sundays, or Legal Holidays.

If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, and shall be deemed to have been completed as of the required date.

(e)      De Minimis Distributions

If any Distribution required to be made under the Plan is in an amount less than $100, the Debtor may retain such funds to be combined with subsequent Distributions until the earlier of: 1) the time by which the aggregate Distribution will satisfies the Holder's claim in full, if such claim is in an amount less than $100; 2) the amount of the aggregate Distributions is greater than $100; or 3) six (6) months from the date of the retained Distribution.

7.10 -  **Objections to and Resolution of Claims**.

From and after the Effective Date, the Reorganized Debtor shall have the authority, in its discretion, to file, settle, compromise, withdraw, or litigate to judgment all objections, if any, to Administrative Claims and Claims.  Unless otherwise ordered by the Court, objections to, or other proceedings concerning, the allowance of Claims (other than objections to Administrative Claims, as provided in Article III.) shall be filed and served upon the Holders of the Claims as to which the objection is made or otherwise commenced as soon as practicable, but in no event later than one hundred and twenty (120) days after the Effective Date.

7.11 -  **Establishment of Disputed Claim Reserves**.

At the time of making the initial Distribution, the Reorganized Debtor shall establish a Disputed Claim Reserve for all Disputed Claims that would be paid under this Plan if such Disputed Claims were Allowed Claims in an aggregate amount equal to the liquidated, non-contingent face value of such Claims.  To the extent any such Disputed Claim is in whole or in part unliquidated and/or contingent as of the Distribution Date, the Reorganized Debtor, in its sole discretion, may elect not to deposit any amount in the Disputed Claim Reserve on account of such unliquidated and/or contingent portion of such Disputed Claim.  No later than five (5) Business

19

Days following the entry of a Final Order either (a) Allowing such Disputed Claim (in whole or in part) or (b) disallowing such Disputed Claim (in whole or in part), the Reorganized Debtor shall (i) to the extent such Claim has been Allowed in whole or in part, distribute to the Holder of such Claim an amount equal to the amount such Holder would have received had such Claim (or portion thereof) been an Allowed Claim on the Effective Date, and (ii) to the extent such Claim has been Disallowed, retain the balance of the funds on deposit in such Disputed Claim Reserve equal to the portion of such Claim that has been Disallowed.

## 7.12 - __Estimation__.

The Reorganized Debtors or the Reorganized Debtor may at any time request that the Bankruptcy Court estimate, subject to 28 U.S.C. § 157, any Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Reorganized Debtors, or the Reorganized Debtor have previously objected to such Claim. The Bankruptcy Court will retain jurisdiction to estimate any Claim at any time, including during proceedings concerning any objection to such Claim. In the event that the Bankruptcy Court estimates any Disputed Claim, such estimated amount may constitute either (a) the Allowed amount of such Claim, (b) the estimate to be used by the Reorganized Debtor in calculating potential Distributions under the Plan, or (c) a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Reorganized Debtor may elect to object to ultimate payment of such Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not necessarily exclusive of one another.

## 7.13 - __Contractual Relationship and Default.__

The Plan, upon confirmation, constitutes a new contractual relationship by and between the Reorganized Debtors and their creditors. In the event of a default by the Reorganized Debtors under the Plan, Creditors shall be entitled to enforce all rights and remedies against the Reorganized Debtor for breach of contract or as otherwise allowed under applicable State and Federal Law, including but not limited to seeking to enforce the terms of the Plan in the Bankruptcy Court in accordance with Paragraph 11.2. Any secured creditor claiming a breach of the Plan by the Reorganized Debtors will be able to enforce all of their rights and remedies including foreclosure of their deed of trust, security agreement, lien, or mortgage pursuant to the terms of such document. Any creditor claiming a breach by the Reorganized Debtor must provide written notice to the applicable Reorganized Debtor(s) of the claimed default, the notice must provide the Reorganized Debtor a ten (10) day period within which to cure the claimed default. Upon the Reorganized Debtor's failure to cure the default within such ten-day period, the creditor may proceed to exercise their rights and remedies, including seeking conversion or pursuing their rights under State or Federal Law. For the avoidance of a doubt, the Reorganized Debtor shall not be required to provide formal notice of a default under the Plan prior to seeking enforcement of the Plan terms.

For purposes of the claims of the applicable taxing authorities, including with limitation, the Internal Revenue Service, default is defined as the Debtors' failure to make timely payments to the applicable taxing authority as set forth in the Plan and may include, but is not limited to, the Debtor not remaining in tax compliance post-confirmation as to tax filing and payment obligations as required under the Internal Revenue Code and applicable State and Federal Law. In the event

of default, written notice is required on the Reorganized Debtor and Reorganized Debtor's counsel. In the event default is not cured within 10 days from the date of notice in writing, then, regardless of any other plan provision, the entire pre-petition amount due to such taxing authority is immediately due and owing, and the enforcing taxing authority shall be able to enforce obligations as if the bankruptcy case had not been filed and no stay or injunction is then in effect.

# ARTICLE VIII.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1 -   **Assumption and Rejection of Executory Contracts and Unexpired Leases.**

On the Effective Date, the following contracts of the Debtor shall be deemed assumed in accordance with the provisions and requirements of Bankruptcy Code §§ 365 and 1123:

a.      All Sale Contracts with Class 7 Buyers that elect for assumption of such contracts;

b.      All other contracts of the Debtor *except* for those Executory Contracts that: (a) Class 7 Buyers elect to have rejected on the Effective Date; (b) have already been rejected by order of the Bankruptcy Court; or (c) are subject to a motion to reject that is pending on the Effective Date.

Ten (10) days prior to any hearing on Confirmation set by the Bankruptcy Court, the Debtor shall file a summary of the Class 7 Buyers electing for the Debtor to assume their Sale Contracts and those electing for the Debtor to reject their Sale Contract. In the event the Debtor is proceeding under Scenario 2, the Debtor shall provide specific notice that it is proceeding under Scenario 2 and notice of the bar date for filing a rejection damage claim as set forth in Paragraph 8.3 herein.

Each Executory Contract assumed pursuant to this Plan shall vest and be fully enforceable by Reorganized Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption or applicable law.

### 8.2 -   **Cure.**

Except as otherwise agreed to by the parties or otherwise provided in the Plan, on the Effective Date, the applicable Debtor or Reorganized Debtor, as the case may be, shall cure any and all undisputed defaults under any Executory Contract that is assumed pursuant to the Plan in accordance with section 365 of the Bankruptcy Code. Unless the parties to the contract or lease agree otherwise, all disputed defaults, if any, that are required to be cured shall be cured promptly as agreed by the parties or determined by the Bankruptcy Court after (i) the entry of a Final Order determining the amount, if any, of the liability with respect thereto, and (ii) the initial Periodic Distribution Date.

8.3 -   **Rejection Damage Claims.**

All Claims for damages arising from the rejection of an Executory Contract pursuant to the Plan or prior to the Effective Date, including, without limitation, those contracts rejected by the election of the Class 7 Buyers, shall be filed with the Bankruptcy Court no later than the first Business Day that is twenty-eight (28) days after the Effective Date or the first Business Day that is twenty-eight (28) days after the entry of the Final Order approving the rejection, if such Final Order is entered after the Effective Date.  Every such Claim that is timely filed, as and when it becomes an Allowed Claim, shall be treated as a Class 8 General Unsecured Claim.  Every such Claim that is not timely filed by the deadline to do so shall be forever barred, unenforceable, and discharged, and the Creditor holding the Claim shall not receive or be entitled to any Distribution under the Plan on account of such Claim.  Notwithstanding anything contained in this Plan, the Debtor or Reorganized Debtor reserves the right to object to any Claim arising from the rejection of an Executory Contract.

## ARTICLE IX.
## EFFECT OF CONFIRMATION OF THE PLAN

**9.1   Binding Effect.**

The rights, benefits, and obligations of any Person named or referred to in the Plan will be binding upon, and will inure to the benefit of, the heir, executor, administrator, successor or assign of such Person.

**9.2   Vesting of Property.**

On the Effective Date of the Plan all property of the Estate excluding Avoidance Actions shall revest in the Reorganized Debtor free and clear of all liens except those specifically set forth in the Plan or as otherwise provided in the Plan, including the Bridge Loan approved in connection with the Plan, which shall attach to the Property as provided in any applicable loan documents. The Reorganized Debtor shall thereafter hold, use, dispose, or otherwise deal with such property, or operate its business, free of any restrictions imposed by the Bankruptcy Code or by the Court. Except to the extent released herein, all Causes of Action are hereby preserved.

Notwithstanding the retention of the Avoidance Actions by the estate, the Debtor shall be entitled to seek entry of a final decree upon substantial consummation of the Plan.

**9.3   Reinstatement and Continuation of Insurance Policies.**

Unless otherwise assumed during the pendency of the Chapter 11 Cases, from and after the Effective Date, each of the Debtors' insurance policies in existence on and as of the Confirmation Date shall be reinstated and continued in accordance with its terms and, to the extent applicable, shall be deemed assumed by the Reorganized Debtors pursuant to section 365 of the Bankruptcy Code.

**9.4   Discharge of Debtors.**

Scenario 1 – If the Debtor is proceeding under Scenario 1, the Debtor shall receive a discharge on the Effective Date of the Plan pursuant to Section 1141(d). Confirmation of the Plan and the occurrence of the Effective Date of the Plan shall constitute a modification of any note or obligation for which specification and treatment is provided under the Plan as set forth in the Plan. Any obligation or note, previously in default, so modified, shall be cured as modified as of the Effective Date.  This provision shall be operable regardless of whether the Plan provides for any obligation to be evidenced by a rewritten loan or security document following confirmation of the Plan.

Scenario 2 – Under Scenario 2, the Debtor shall not receive a discharge pursuant to 11 U.S.C. § 1141(d), as the Debtor will have no continued operations following the Sale.

Nothing in this Plan discharges, releases, precludes, or enjoins: (i) any liability to any governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") that is not a "claim" as defined in 11 U.S.C. § 101(5) ("Claim"); (ii) any Claim of a Governmental Unit arising on or after the Confirmation Date: (iii) any police or regulatory liability to a Governmental Unit that any entity would be subject to as the owner or operator of property after the Confirmation Date; or (iv) any liability to a Governmental Unit on the part of any non-debtor. Nor shall anything in this Plan enjoin or otherwise bar a Governmental Unit from asserting or enforcing, outside this Court, any liability described in the preceding sentence. Notwithstanding any provision of the Plan or any Plan documents created for the purposes of implementing or supplementing the Plan, the United States' setoff rights under Federal Law as recognized in section 553 of the Bankruptcy Code and related recoupment rights shall be preserved and are unaffected.

## 9.5     **Exculpation**

**Except as set forth in this Plan, neither the Debtor, the Creditors' Committee,  nor any of their agents, representatives, attorneys, accountants or advisors shall have or incur any liability in connection with, or related to formulating, negotiating, soliciting, preparing, disseminating, confirming the Plan, or any contract, instrument, release or other agreement, or document created or entered into in connection with the Plan or any other act taken or omitted to be taken in connection with the restructuring of the Debtor pursuant to the Plan during the pendency of the Debtor's Chapter 11 Case and through the date of confirmation of the Plan; provided that the foregoing shall have no effect on the liability for a breach of the Plan or any other document, instrument, or agreement executed and delivered in connection with the Plan, or that otherwise results from any act or omission that is determined in a Final Order to have constituted gross negligence, bad faith, or willful misconduct; provided further that nothing in this Plan shall limit the liability of any retained attorney in violation of Rule 1.8(h)(1) of the Colorado Rules of Professional Conduct.  For the avoidance of a doubt, there shall be no liability limitation for the Debtors and their Insiders, for their actions or omissions occurring before the Petition Date, *or after the Confirmation Date*, or their actions or omissions after the Petition Date that are not official actions made in good faith, nor shall it release the Debtor from any obligations arising under contracts entered into on a post-petition basis.**

## 9.6     **Injunction.**

**Except as otherwise expressly provided in the Plan or the Confirmation Order, but subject to the occurrence of the Effective Date, all Persons who have held, hold, or may hold Claims against, or Interests in, the Debtor, or who assert rights in or against the Debtor or its Property, that arose before or were held as of the Effective Date for the Debtor, along with its Insiders, employees, agents, officers, directors, principals or representatives are permanently enjoined, on and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind against or affecting the Debtor, its Estates, its Assets, its Property, the Reorganized Debtor, or any of its successors, with respect to any such Claim or Equity Interest, (b) the enforcement, attachment, collection, levy or recovery by any manner or means of any judgment, award, decree, or order against the Debtor, its Estate, its Assets, the Property, the Reorganized Debtor or any of its successors on account of any such Claim or Interest; (c) creating, perfecting, or enforcing any encumbrance of any kind against Debtor, its Estates, its Assets, its Property, the Reorganized Debtor, or any of its successors, on account of any such Claim or Interest; (d) asserting any right of setoff or subrogation of any kind against any obligation due from the Debtor or the Reorganized Debtor or against the property or interests in property of the Debtor or the Reorganized Debtor on account of any such Claim or Interest; (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan to the full extent permitted by applicable law; (f) taking any action to interfere with the implementation of the Plan; and (g) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan, such as commencing or continuing in any manner, any action or other proceeding of any kind with respect to any Claims and Causes of Action which are extinguished or released pursuant to the Plan; *provided*, *however*, that nothing contained herein shall preclude such Persons from exercising their rights pursuant to and consistent with the terms of the Plan.**

### 9.7     Preservation of Causes of Action

Except as otherwise provided in this Plan, all rights and all Causes of Action, including all tax setoff and refund rights arising under section 505 of the Bankruptcy Code, are retained, vested in the Reorganized Debtor and preserved pursuant to Bankruptcy Code section 1123(b).  From and after the Effective Date, the Reorganized Debtor shall have the sole right to investigate, pursue or compromise all Causes of Action.  Except as expressly provided in this Plan or the Confirmation Order, nothing contained in this Plan or the Confirmation Order shall be deemed a waiver or relinquishment of a Claim, Cause of Action, right of setoff, or other legal or equitable defense the Debtor has that is not specifically waived or relinquished by this Plan.

### 9.8     Compromise and Settlement of Claims, Interests, and Controversies

Without limiting the discharge and injunction provisions of the Plan, pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided pursuant to the Plan, the Plan incorporates a good-faith compromise and settlement of Claims and controversies relating to the contractual, legal, and equitable rights that a Holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest, or any distribution to be made on account of such Allowed Claim or Allowed Interest, with respect to all Holders of Claims or Interests that have consented or are deemed to have

consented to such compromise and settlement. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Interests and is fair, equitable, and reasonable.

# ARTICLE X.

## MISCELLANEOUS PROVISIONS

**10.1 - Payment of Statutory Fees.**

All fees payable on or before the Effective Date pursuant to 28 U.S.C. § 1930 shall be paid by the Reorganized Debtor on or before the Effective Date and all such fees payable after the Effective Date shall be paid by the Reorganized Debtors as and when such fees become due.

**10.2 - Retention of Jurisdiction.**

Notwithstanding confirmation of the Plan, the Court shall retain jurisdiction for the following purposes:

1.  Determination of the allowability of claims upon objection to such claims by the Debtors-in-Possession or by any other party in interest, including the liquidation of Disputed Claims;

2.  Determination of the request for payment of claims entitled to priority under 11 U.S.C. Section 507(a)(2), including compensation of the parties entitled thereto;

3.  Resolution of any disputes regarding interpretation of the Plan;

5.  Implementation of the provisions of the Plan and entry of injunctions and other orders in aid of consummation of the Plan, including without limitation, appropriate orders to protect the Reorganized Debtors from action by creditors;

6.  Modification of the Plan pursuant to 11 U.S.C. §1127;

7.  Adjudication of any Causes of Action; and

8.  Entry of a final decree.

**10.3 - Modification of the Plan.**

1.  Pre-Confirmation Modifications.

The Debtor may alter, amend, or modify the Plan before the Confirmation Date as provided in section 1127 of the Bankruptcy Code.

25

2.     Post-Confirmation Immaterial Modifications.

After the Confirmation Date, the Debtor or the Reorganized Debtor, as the case may be, may, with the approval of the Bankruptcy Court, without notice to all holders of Claims or Interests, insofar as it does not materially and adversely affect the Holders of Claims or Interests, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary to expedite consummation of the Plan.

3.     Post-Confirmation Material Modifications.

After the Confirmation Date, the Debtor or the Reorganized Debtor, as applicable, may alter or amend the Plan in a manner which, as determined by the Bankruptcy Court, materially and adversely affects Holders of Claims or Interests, provided that such alteration or modification is made after notice and a hearing as provided in section 1127 of the Bankruptcy Code.

**10.4 - Governing Law.**

Unless a rule of law or procedure is supplied by Federal law (including the Bankruptcy Code and Bankruptcy Rules), the laws of the State of Colorado (without reference to the conflicts of laws provisions thereof) shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, unless otherwise specified.

**10.5 - Filing or Execution of Additional Documents.**

On or before the Effective Date, the Debtor or the Reorganized Debtor, as the case may be, shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**10.6 - Exemption from Transfer Tax.**

Pursuant to Section 1146(a) of the Code, the issuance, transfer, or exchange of notes or equity securities under the Plan by the Debtor, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or the making or delivery of any deed or instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax.

**10.7 - Dissolution of Committee**

On the Effective Date, the Committee will dissolve and the members of the Committee and the Committee's Professionals shall be deemed terminated, and the members of the Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations related to and arising from and in connection with the Chapter 11 Cases, other than for purposes of filing and/or objecting to final fee applications in connection with Professional Fee Claims.

26

**10.8 - <u>Waiver of Bankruptcy Rule 3020(e) and Federal Rule of Civil Procedure 62(a).</u>**

The Debtors may request that the Confirmation Order include (a) a finding that Bankruptcy Rule 3020(e) and Fed. R. Civ. P. 62(a) shall not apply to the Confirmation Order and (b) authorization to consummate the Plan immediately after entry of the Confirmation Order.

**10.9 - <u>Exhibits/Schedules.</u>**

All exhibits and schedules to the Plan are incorporated into and constitute a part of the Plan as if fully set forth herein.

**10.10 - <u>Notices.</u>**

All notices, requests, and demands hereunder to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

a.   <u>**To the Debtor at:**</u>
Uptown 240, LLC
c/o Danilo Ottoborgo
Uptown 240, LLC
600 17th Street, STE 2800 South
Denver, CO 80202

With a copy to:
Keri L. Riley
Kutner Brinen Dickey Riley, P.C.
1660 Lincoln St., Suite 1720
Denver, CO 80264
Email: klr@kutnerlaw.com

b.   <u>**To the Committee at:**</u>
Brian Fletcher
Gabrielle Palmer
Onsager Fletcher Johnson Palmer, LLC
600 17th Street, Suite 425N
Denver, CO 80202
Email: gpalmer@ofjlaw.com

c.   To an allowed claimant, at the addresses set forth in the allowed Proof of Claim, if filed, otherwise, at the address set forth for the claimant in the Debtor's Schedules filed with the Court.

**10.11 -  <u>Vacatur of Confirmation Order.</u>**

If a Final Order denying confirmation of the Plan is entered, or if the Confirmation Order is vacated, then the Plan shall be null and void in all respects, and nothing contained in the Plan shall (a) prejudice in any manner the rights of the Debtor, (b) constitute an admission, acknowledgment, offer, or undertaking by the Debtor in any respect, including in any proceeding or case against either Debtor, or (c) be admissible in any action, proceeding or case against the Debtor in any court or other forum.

**[remainder of page intentionally left blank]**

## ARTICLE XI.

## CONFIRMATION REQUEST

11.1 - The Debtor, as proponent of the Plan, requests confirmation of the Plan pursuant to 11 U.S.C. §1129.  The Debtor will solicit acceptance of the Plan after its Disclosure Statement has been approved by the Court and is transmitted to the creditors, interest holders and parties in interest.  In the event the Debtor does not obtain the necessary acceptances of its Plan, it may make application to the Court for confirmation of the Plan pursuant to 11 U.S.C. §1129(b).  The Court may confirm the Plan if it does not discriminate unfairly and is fair and equitable with respect to each class of  Claims or Interests that is impaired and has not voted to accept the Plan.

DATED: July 25, 2023

UPTOWN 240, LLC


By:/s/ Danilo Ottoborgo
Danilo Ottoborgo, President

Keri L. Riley
Kutner Brinen Dickey Riley, P.C.
1660 Lincoln St., Suite 1720
Denver, CO 80264
Telephone:  303- 832-2400
Email: klr@kutnerlaw.com

ATTORNEYS FOR THE DEBTOR
AND DEBTOR-IN-POSSESSION

# Exhibit A

## SETTLEMENT AGREEMENT

This SETTLEMENT AGREEMENT (the "Agreement") is entered into by and among Uptown 240, LLC ("Uptown"), the Official Committee of Unsecured Creditors of Uptown 240, LLC (the "Committee"), MNJ Consulting by Design, Inc. ("MNJ"), and JGJP Dillon, LLC ("JGJP"). Uptown, the Committee, MNJ, and JGJP may be referred to herein as the "Parties" or individually as a "Party."

## Recitals

A.      On February 23, 2023 (the "Petition Date"), Uptown filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Bankruptcy Code before the United States Bankruptcy Court for the District of Colorado (the "Bankruptcy Court"), In re: Uptown 240, LLC, Case No. 23-10617-TBM (the "Bankruptcy Case").

B.      On April 21, 2023, the Committee was formed by the United States Trustee.

C.      Uptown owns certain real property and improvements located at 240 Lake Dillon Drive, Dillon, Colorado (the "Property") which it intends to develop for residential and commercial use.

D.      JGJP is the holder of a Promissory Note, dated March 28, 2019, in the original principal amount of $5,240,883.00, as subsequently amended and assigned from the original holder to JGJP on or about September 15, 2022 (the "JGJP Note"). The JGJP Note is secured by a Deed of Trust encumbering the Property and for the benefit of JGJP (the "JGJP DOT"). The JGJP Note is personally guaranteed by Danilo Ottoborgo, Ivano Ottoborgo, and Michael Graham (the "Guarantors").

E.      On September 17, 2020, Clay Dean Electric commenced foreclosure of its mechanic's lien asserted against the Property in the Summit County District Court, Case No. 2020CV30121 (the "Lien Foreclosure Case"). The defendants in the Lien Foreclosure Case include Uptown, JGJP and other entities asserting mechanic's liens against the Property. As a result of the Bankruptcy Case, the Lien Foreclosure Case is stayed.

F.      On or about October 27, 2022, JGJP filed its Notice of Election and Demand with the Public Trustee for Summit County, Colorado, commencing a Public Trustee foreclosure action in which JGJP filed a Motion for Order Authorizing Sale pursuant to Colorado Rules of Civil Procedure, Rule 120 in Summit County District Court, Case. No. 2023CV30002 (the "JGJP Foreclosure Case"). As a result of the Bankruptcy Case, the JGJP Foreclosure Case and the foreclosure on the Property is stayed.

G.      On May 11, 2023, JGJP filed its Proof of Claim number 33-1, asserting a prepetition claim in the amount of $9,180,870.95, with interest accruing thereon at the rate of 24% compounded monthly (the "JGJP Claim").

H.      On April 7, 2023, JGJP filed its Amended Motion for Relief from Stay to Continue Foreclosure Proceeding on 240 Lake Dillon Drive Property, (the "RFS Motion"). Pursuant to the

RFS Motion, JGJP requested relief from the automatic stay pursuant to 11 U.S.C. §§ 362(d)(1) and (2).

I.      On April 25, 2023, Uptown filed its objection to the RFS Motion (the "Uptown Objection").

J.      On April 25, 2023, the Committee filed its Joinder in Support of Debtor's Objection to Amended Motion for Relief from Stay (the "Committee Joinder").

K.      On April 25, 2023, MNJ Consulting By Design, Inc. filed a joinder to the Uptown Objection.

L.      On April 28, 2023, CallComm Mining Corp. and Note Acquisitions, Inc. also filed joinders to the Uptown Objection, and have since withdrawn their joinders.

M.      On April 24, 2023, RMS Concrete, Inc. filed a Response to the Motion for Relief from Stay, which was subsequently resolved by the Stipulation and Motion to Approve in Relation to Motions for Relief from Stay, which was approved on May 30, 2023.

N.      On June 21 and 22, the Bankruptcy Court commenced an evidentiary hearing on the RFS Motion, the Uptown Objection and the Committee Objection.  The hearing is continued to July 18, 2023.

O.      On June 28, 2023, Uptown filed its Application to Employ Hilco Real Estate, LLC as Commercial Real Estate Broker and Approving Real Estate Consulting and Advisory Services Agreement (the "Broker Motion"). The Debtor filed its non-contested certificate for the Broker Motion on  July 14, 2023.

P.      Uptown disputes the amount of the JGJP Claim on several grounds, including without limitation, that (1) the JGJP Claim includes miscalculated compounded interest; and (2) includes amounts for the fees and costs which Uptown alleges are not appropriate. Uptown has not yet filed an objection to the JGJP Claim.

Q.      Uptown has proposed a Plan of Reorganization Dated May 24,2023 ("Plan"), and filed its Disclosure Statement to Accompany the Plan of Reorganization which has not yet been approved by the Bankruptcy Court.  JGJP filed an Objection to the Adequacy of the Disclosure Statement on July 3, 2023, asserting, among other things that it intends to object to confirmation of the Plan.

R.      In an effort to avoid the costs, delays, and risks associated with litigation regarding the disputes as to the RFS Motion, amounts claimed under the JGJP Claim and related to the JGJP Note, the JGJP DOT, the Foreclosure Case, the Lien Foreclosure Case, and the Plan, as may be amended prior to confirmation, the Parties desire to fully, and finally, settle any and all claims and disputes any of them may have pursuant to the terms and conditions set forth in this Agreement.

## AGREEMENT

**NOW THEREFORE**, in consideration of the foregoing and the mutual covenants contained herein, the Parties agree as follows:

1. **Allowed Claim Amount.** Effective upon execution of this Agreement, and subject to entry of the Approval Order (defined below), the amount claimed in the JGJP Claim shall be allowed (the "Allowed Claim"), which claim may be satisfied with the payments and in the manner set forth in Section 2 below. JGJP shall retain the lien evidenced by the deed of trust that secured its claim as of the Petition Date and all rights thereunder until it receives payment of the Settlement Amount as defined below. In the event of any sale of the Property JGJP shall be entitled to credit bid pursuant to 11 U.S.C. § 363(k) in the full amount of the JGJP Claim plus any additional accrued interest, costs and fees from the Petition Date through the date of the sale closing, subject to 11 U.S.C. § 506 and the validity, extent and priority of other secured claims, as applicable.

2. **Partial Satisfaction of the Allowed Claim.** On, or within ninety (90) days from the date Uptown files a motion to approve this Agreement with the Bankruptcy Court  (the "Payment Date"), Uptown shall pay, or cause to be paid to JGJP the sum of Nine Million Two Hundred Fifty Thousand Dollars ($9,250,000.00) the ("Settlement Amount") at the time of closing of any sale of the Property made pursuant to Section 3 of this Agreement or any refinancing provided for under Section 4 of this Agreement. In the event that the 90th day falls on a weekend or holiday, the Payment Date shall be extended to the next business day. The Settlement Amount to be paid to JGJP must be in funds that comply with all applicable Colorado laws, including electronic transfer funds, wire transfer, certified check, and cashier's check ("Good Funds"), to be delivered to JGJP in care of its attorneys. JGJP agrees to cooperate with any title company or lender that may be handling the closing for any refinancing, sale, or disbursal of funds therefrom and shall provide a payoff statement that is consistent with the provisions of this Section 2 and, if required, a release of the JGJP DOT to such title company.  Within one (1) business day after its receipt of the Settlement Amount, JGJP shall file a withdrawal of the public trustee foreclosure action and take steps to release the JGJP Deed of Trust. Within five (5) business days after receipt of the Settlement Amount, JGJP shall file an amended proof of claim to acknowledge receipt of the Settlement Amount and reflect an unsecured claim in the amount of $500,000, which amount shall be treated and paid at the same time and in the same percentage as other allowed unsecured claims in accordance with the Bankruptcy Code and any confirmed Plan, if applicable.

3. **Bid Procedures Motion**. On or before July 17, 2023, Uptown shall file its Motion for Order Authorizing and Approving (A) Bidding Procedures for the Sale of Debtor's Property by Auction; (B) Notice of Sale by Auction; (C) the Auction; and (D) Setting Deadline to Object to the Sale of the Property (the "Bidding Procedures Motion"). Pursuant to the Bidding Procedures Motion, Uptown shall seek authority to, *inter alia*, solicit bids to sell the Property to the highest, successful bidder as determined by auction (as necessary). Any sale shall be closed no later than the Payment Date. Further, pursuant to the Bidding Procedures Motion, Uptown shall seek authority to establish the deadline for prospective buyers of the Property to submit a bid no later than 30 days prior to the Payment Date (the "Bid Deadline"). The Bidding Procedures Motion shall further establish bid qualifications, for any prospective bidder and Uptown's discretion to

determine qualified bids.

Any sale of the Property shall be free and clear of all liens, claims, and interests under 11 U.S.C. § 363(b) and (f). JGJP acknowledges 11 U.S.C. 363(n) and JGJP agrees not to control or collude with any prospective bidders or purchasers, whether known or unknown, qualified or unqualified, at any point during the sale process.

4.    **Refinancing**.  Up to and until the Bid Deadline, Uptown may continue its efforts to refinance the debt owed on the Property.  On the day following the Bid Deadline, Uptown shall cease its efforts to obtain refinancing and instead shall commit to selling the Property pursuant to and consistent with the terms set forth in the Bidding Procedures Motion.

5.    **JGJP Relief from Stay Motion.**  Concurrent with filing a motion to approve this Agreement, JGJP, Uptown, MNJ, and the Committee shall jointly file a Motion to Hold the RFS Motion in abeyance and request vacature of any hearing on the RFS Motion.  The automatic stay shall continue until the first (1st) day following the Payment Date.

6.    **Uptown's Plan of Reorganization**.  Subject to entry of the Approval Order, Uptown shall amend the Plan, and accompanying disclosure statement, filed on May 26, 2023 (the "Disclosure Statement"), to reflect and incorporate the terms of this Agreement.  The amended Plan and Disclosure Statement shall also provide that the classification of any other secured claim (whether based on an asserted mechanic's lien, judgment lien or other lien) relative to the JGJP Claim is for purposes of claim administration in this Chapter 11 case only and is not intended to bind and shall not be construed as an admission by any of those parties and JGJP as to the validity, relative priority, and amount of their respective liens in the Lien Foreclosure Case.  Subject to Uptown's filing of such amendments, JGJP shall not oppose approval of the Disclosure Statement and confirmation of the Plan, as amended.

7.    **Satisfaction of Claim**.  Subject to entry of the Approval Order (defined below) and effective upon payment of the Settlement Amount, JGJP agrees to release the balance of its Allowed Claim against Uptown except for the amount of $500,000.00, which amount shall be reclassified and treated as an allowed unsecured claim.  Upon request from either Uptown or JGJP, each shall cooperate and assist the other, as appropriate, necessary or deemed necessary, in any litigation or court proceeding regarding satisfaction and release of any claims or disputes as set forth in this Agreement.  The release set forth herein shall not apply in the event of default by Uptown.

8.    **Default**.  In the event that Uptown fails to pay the Settlement Payment to JGJP on or before the Payment Date or in the event this case is converted to a Chapter 7 case before the Payment Date, Uptown shall be in default of this Agreement and JGJP shall be entitled to the entry of an Order granting the RFS Motion and relief from the automatic stay to allow the Lien Foreclosure Case to proceed for the purpose of determining the validity, priority and amount of the liens that have been asserted in that action, and to be entered on a forthwith basis without further notice or hearings thereon.  Further, JGJP shall be allowed to pursue the full amount of the JGJP Claim plus any interest that accrues thereon at the default rate and any costs and fees that may be incurred after the Petition Date, whether in this Bankruptcy Case (either under Chapter 11

or in the event of conversion to Chapter 7 of the Bankruptcy Code), in any state court action if the Bankruptcy Case is dismissed or if relief from the automatic stay is granted, in the JGJP Foreclosure Case if this Bankruptcy Case is dismissed or relief from the automatic stay is granted, or in any subsequent bankruptcy case that the Debtor may file.  Uptown and the Committee agree not to seek conversion of this case to one under Chapter 7 of the Bankruptcy Code until at least ten (10) days after the Payment Date unless otherwise agreed to with JGJP.

In the event of a default other than a failure to pay the Settlement Amount by the Payment Date, JGJP shall provide written notice of default to counsel for the Debtor and counsel for the Committee with a ten (10) day opportunity to cure.  In the event of an uncured default **or** a default resulting from the failure to pay the Settlement Amount by the Payment Date as set forth above, JGJP shall be entitled to file a Notice of Default and/or a Certificate of Non-Contested Matter with the Bankruptcy Court to prompt the entry of the entry granting the RFS Motion and granting relief from stay to proceed with the Lien Foreclosure Case to resolve claims concerning the validity, priority and amount of the liens asserted therein and to vacate the preliminary injunction entered in that case.  No further notice shall be required with respect to such Notice of Default or subsequent orders.

9.     **Engineering Report**.  On or before July 21, 2023, Uptown shall file a motion seeking authority to employ Level Engineering as an engineer for the estate to advise Uptown regarding the condition of the existing construction, complete any required testing, and provide recommendations regarding the Property.

10.     **Bankruptcy Court Approval**. This Agreement is subject to Bankruptcy Court approval. No later than two (2) business days after mutual execution of this Agreement by the Parties, Uptown shall file a Motion to approve this Agreement and Proposed Order with the Bankruptcy Court.  Entry of an Order approving this Agreement shall be defined as the "Approval Order".  In the event this Agreement is not approved the Bankruptcy Court, this Agreement shall be void and all rights of the respective parties shall remain as if no Agreement was struck.

11.     **Mutual Releases**. Effective upon the entry of the Approval Order and receipt by JGJP of the Settlement Amount on or before the Payment Date, Uptown and the Committee, on the one hand and JGJP on the other hand, and for and on behalf of, each of their respective affiliates, members, officers, directors, managers, shareholders, partners, employees, predecessors, subsidiaries, parent entities insurers, agents, attorneys, accountants, administrators, representatives, subrogees, heirs, successors or assigns (all collectively "Affiliates"),  release, remise, and forever discharge each other and their respective Affiliates from any and all claims, causes of action, and demands  of any nature whatsoever of any kind, brought or which could have been brought, whether contingent or liquidated, known or unknown, including but not limited to claims that were or could have been asserted regarding the RFS Motion, the Foreclosure Case and the Lien Foreclosure Case, or related to, or arising from or out of, in any manner, the JGJP Claim, the JGJP Note, or the JGJP DOT,  which releases shall also include the guarantors of the JGJP Claim and JGJP Note arising from the Unconditional Guaranty Agreement and any and all other documents obligating such grantors but excepting therefrom JGJP's unsecured claim for $500,000 that is provided for in Section 2 above.

Each of the Parties to this Agreement hereby represent and warrant to the others that they are duly authorized and empowered to execute and deliver this Agreement on behalf of their respective Affiliates.

12.     **Amendment.** This Agreement may only be amended in writing, signed by each of the Parties hereto.

13.     **Severability**.  If any term or other provision of this Agreement is invalid, illegal, or incapable of being enforced by any rule of law or public policy, all other conditions and provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner adverse to any party.

14.     **Waiver**.  No waiver of any of the provisions of this Agreement shall be deemed to constitute a waiver of any other provision, whether or not similar, nor shall any waiver constitute a continuing waiver.

15.     **Costs.**  Each Party shall bear such Party's own costs and attorney's fees related to the negotiation and execution of this Agreement.

16.     **Counsel**. The Parties to this Agreement acknowledge they have sought and/or received advice of legal counsel concerning the terms and effect of this Agreement.

17.     **Counterparts; Electronic Signatures**. This Agreement may be executed in counterparts all such counterparts to be viewed together as a single Agreement. This Agreement may be executed electronically by DocuSign or other similar and recognized electronic signature service.  Copies of this Agreement or parts thereof containing signatures that are transmitted electronically and delivered by facsimile or scanned and emailed shall have the same effect as if the parties hereto had signed the same document and will be deemed acceptable for purposes of implementation of this Agreement.

18.     **Governing Law**. This Agreement shall be interpreted and construed in accordance with the laws of the United States Bankruptcy Code and the laws of the State of Colorado.

19.     **Venue**.  A Party seeking to enforce or otherwise litigate any dispute regarding this Agreement may only commence such action in the Bankruptcy Court and each Party consents to jurisdiction of the Bankruptcy Court.

20.     **Enforcement and Costs**.  If any Party brings a claim to enforce, or for breach of, this Agreement, the prevailing Party shall be entitled to its reasonable costs and attorney's fees.

21.     **Entire Agreement**.  This Agreement constitutes the entire agreement of the Parties and supersedes all prior agreements, written or oral, amongst the Parties.

22.     **Authority to Execute Agreement**. Each person executing this Agreement on behalf of a Party represents and warrants that they are authorized and have the legal capacity to

sign this Agreement and bind the Party for whom they sign and that Party's respective Affiliates.

23. **Agreement is Binding**. All of the provisions of this Agreement shall be binding upon the Parties hereto, and their respective successors in interest, including Uptown's creditors and its bankruptcy estate, any Chapter 11 trustee subsequently appointed in the bankruptcy case for Uptown, and including upon dismissal, conversion to Chapter 7, or closing of Uptown's bankruptcy case. Notice of the motion to approve this Agreement shall expressly inform creditors and interested parties of the binding nature of this Agreement and that the provisions of this Agreement may impact any distributions to both pre-petition and post-petition creditors in the event this case is converted to a case under Chapter 7.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date set forth below.

**UPTOWN 240, LLC**

By: _____
Daniló Ottoborgo, as president of Uptown 240, LLC

Date: 7.17.23 _____

**JGJP DILLON, LLC**

By: _____
Jake Porritt, Manager

Date: _____

**The Official Committee of Unsecured Creditors of Uptown 240, LLC**

By: _____
Angie Ward, Chairperson

Date: _____

**MNJ CONSULTING BY DESIGN, INC.**

By: _____

Date: _____

sign this Agreement and bind the Party for whom they sign and that Party's respective Affiliates.

23. **Agreement is Binding**. All of the provisions of this Agreement shall be binding upon the Parties hereto, and their respective successors in interest, including Uptown's creditors and its bankruptcy estate, any Chapter 11 trustee subsequently appointed in the bankruptcy case for Uptown, and including upon dismissal, conversion to Chapter 7, or closing of Uptown's bankruptcy case.  Notice of the motion to approve this Agreement shall expressly inform creditors and interested parties of the binding nature of this Agreement and that the provisions of this Agreement may impact any distributions to both pre-petition and post-petition creditors in the event this case is converted to a case under Chapter 7.

**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date set forth below.

**UPTOWN 240, LLC**

By:_____
Danilo Ottoborgo, as president of Uptown 240, LLC

Date:_____

**JGJP DILLON, LLC**

By:_____
Jake Porritt, Manager

Date: July 17, 2023_____

**The Official Committee of Unsecured Creditors of Uptown 240, LLC**

By:_____
Angie Ward, Chairperson

Date:_____

**MNJ CONSULTING BY DESIGN, INC.**

By:_____

Date:_____

sign this Agreement and bind the Party for whom they sign and that Party's respective Affiliates.

23.     **Agreement is Binding**. All of the provisions of this Agreement shall be binding upon the Parties hereto, and their respective successors in interest, including Uptown's creditors and its bankruptcy estate, any Chapter 11 trustee subsequently appointed in the bankruptcy case for Uptown, and including upon dismissal, conversion to Chapter 7, or closing of Uptown's bankruptcy case.  Notice of the motion to approve this Agreement shall expressly inform creditors and interested parties of the binding nature of this Agreement and that the provisions of this Agreement may impact any distributions to both pre-petition and post-petition creditors in the event this case is converted to a case under Chapter 7.


**IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date set forth below.

**UPTOWN 240, LLC**                           **JGJP DILLON, LLC**

By:_____        By:_____
Danilo Ottoborgo, as president of Uptown 240,     Jake Porritt, Manager
LLC
                                              Date:_____
Date:_____

                                              **The Official Committee of Unsecured**
                                              **Creditors of Uptown 240, LLC**

                                              By: Angie Ward
                                                  _____
                                              Angie Ward, Chairperson

                                              Date: 17/07/2023
                                                  _____

                                              **MNJ CONSULTING BY DESIGN, INC.**

                                              By:_____

                                              Date:_____


**Signature:**  *Angela J Ward*

sign this Agreement and bind the Party for whom they sign and that Party's respective Affiliates.

23.    **Agreement is Binding**. All of the provisions of this Agreement shall be binding upon the Parties hereto, and their respective successors in interest, including Uptown's creditors and its bankruptcy estate, any Chapter 11 trustee subsequently appointed in the bankruptcy case for Uptown, and including upon dismissal, conversion to Chapter 7, or closing of Uptown's bankruptcy case.  Notice of the motion to approve this Agreement shall expressly inform creditors and interested parties of the binding nature of this Agreement and that the provisions of this Agreement may impact any distributions to both pre-petition and post-petition creditors in the event this case is converted to a case under Chapter 7.

        **IN WITNESS WHEREOF**, the Parties have executed this Agreement as of the date set forth below.

**UPTOWN 240, LLC**

By:_____
Danilo Ottoborgo, as president of Uptown 240, LLC

Date:_____

**JGJP DILLON, LLC**

By:_____
Jake Porritt, Manager

Date:_____

**The Official Committee of Unsecured Creditors of Uptown 240, LLC**

By:_____
Angie Ward, Chairperson

Date:_____

**MNJ CONSULTING BY DESIGN, INC.**

By:_____*Mike Graham*_____

Date:_____7-17-2023_____